**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL CUTTS, *Plaintiff-Appellant*, <br><br> v. <br><br> RICHLAND HOLDINGS, INC., DBA Acctcorp of Southern Nevada; CLIFFORD MOLIN, DBA Zeeba Sleep Center, *Defendants-Appellees*. | No. 18-15377 <br><br> D.C. No. 2:17-cv-01525-JCM-PAL <br><br> ORDER CERTIFYING QUESTION TO THE NEVADA SUPREME COURT |

Filed July 22, 2019

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit Judges, and Benita Y. Pearson,[*] District Judge.

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Certification of Question to State Supreme Court

The panel certified the following question to the Nevada Supreme Court:

> Is a Fair Debt Collection Practices Act claim a compulsory counterclaim in an action to collect the underlying debt under Rule 13 of the Nevada Rules of Civil Procedure?

The panel addressed other issues in a concurrently filed memorandum disposition. It stayed the appeal of the district court's dismissal of FDCPA claims pending the Nevada Supreme Court's resolution of the certified question.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

We ask the Nevada Supreme Court to resolve an open question of state law. We need guidance in determining whether claims against a debt collector under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, are compulsory counterclaims under Rule 13 of the Nevada Rules of Civil Procedure in an action to collect that debt. Accordingly, we certify the following question:

> Is an FDCPA claim a compulsory counterclaim in an action to collect the underlying debt under Rule 13 of the Nevada Rules of Civil Procedure?

Our phrasing of the question should not restrict the Court's consideration of the issues involved. The Court may rephrase the question as it sees fit in order to address the contentions of the parties. If the Court agrees to decide this question, we agree to accept its decision. We recognize that the Court has a substantial caseload, and we submit this question only because of its significance for actions brought in Nevada state court to recover debts.

I

The FDCPA regulates the actions debt collectors can take when attempting to collect consumer debt. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720 (2017). Congress intended the Act's requirements "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and

to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Relevant to the claims brought in this case, the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of the character, amount, or legal status of any debt" and "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* §§ 1692e(2), (5). It also prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). Finally, it requires a debt collector, within five days of its initial communication with a debtor, to send a letter to the debtor containing the amount of the debt, the identity of the creditor, and information about certain rights the debtor has. *See id.* § 1692g(a).

II

In May 2014, Michael Cutts signed an agreement with Dr. Clifford Molin for the provision of medical services. Cutts agreed "to be financially responsible for all charges incurred regardless of insurance coverage." Further, Cutts agreed that "[i]n the event my account is referred to a collection service due to lack of payment on my part, I agree to pay all collection/legal fees that may be added to my account." By March 2016, Cutts was delinquent on his payments to Dr. Molin, and had an account balance of $274.53. After unsuccessfully attempting to collect the debt

from Cutts, Dr. Molin assigned the debt to Richland Holdings, Inc., a debt collection agency, pursuant to an agreement authorizing Richland to file suit against Cutts on Dr. Molin's behalf. Richland added a collection fee of $137.27 to the debt balance.

Richland filed suit against Cutts in Nevada state court on October 3, 2016. Richland's complaint alleged (1) breach of contract and (2) "monies due and owing." Richland alleged damages in the amount of $411.80, which was the sum of the original $274.53 debt balance plus the $137.27 collection fee, and also requested attorneys' fees and costs.

Cutts failed to answer or mount a defense to the complaint, and on December 8, 2016, the Nevada state court entered a default judgment against him for $1,273.30, reflecting the requested relief plus $111.50 in costs and $750 in attorneys' fees. Notice of the default judgment was entered on December 14, 2016.

Over five months later, on May 31, 2017, Cutts filed suit against Richland and Dr. Molin in federal district court for the District of Nevada. His complaint alleged: (1) violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, (2) abuse of process, (3) violation of Nevada's deceptive trade practices statutes, (4) misrepresentation, and (5) civil conspiracy.

Cutts made three distinct FDCPA claims. First, he alleged that the defendants violated 15 U.S.C. § 1692f by adding a collection fee of $137.27 to his debt. Second, he alleged that an affidavit submitted by Molin in the state court action misrepresented the amount due on the debt because it included the collection fee, in violation of 15 U.S.C. § 1692e. Third, he alleged the defendants failed to provide him "with

a validation of debt letter" in violation of 15 U.S.C. § 1692g, although the complaint did not make clear whether the defendants failed to send a validation of debt letter, or merely sent a non-compliant one.

The district court dismissed Cutts's claims as barred by claim preclusion. The district court reasoned that Cutts's claims bore a logical relationship to the transactions underlying the state court debt collection action, making them compulsory counterclaims in the state court action. Cutts timely appealed.[1]

In a concurrently filed memorandum disposition, *see Cutts v. Richland Holdings, Inc.*, __ F. App'x __ (9th Cir. 2019), we affirm the district court's dismissal of Cutts's misrepresentation and civil conspiracy claims and reverse the district court's dismissal of Cutts's abuse of process claim. We stay Cutts's appeal of the district court's dismissal of his FDCPA claims pending the Nevada Supreme Court's resolution of the question we certify here.[2]

III

We require the Nevada Supreme Court's guidance to resolve the parties' dispute about whether Cutts's FDCPA claims were compulsory counterclaims in the underlying state court action.

---

[1] Cutts abandoned his claim for deceptive trade practices on appeal.

[2] Cutts's argument that the FDCPA preempts the application of Nevada claim preclusion law to his FDCPA claims is waived, because he did not raise it to the district court. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

Nevada law governs the question whether Cutts's FDCPA claims are barred by claim preclusion. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

Under Nevada law, claim preclusion applies when three factors are met: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Mendenhall v. Tassinari*, 403 P.3d 364, 368 (Nev. 2017) (internal quotation marks omitted). Under the third prong, a compulsory counterclaim that was not brought in an earlier action is subject to claim preclusion, *see Mendenhall*, 403 P.3d at 370; *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 474 (Nev. 1998) (per curiam), but a permissive counterclaim is not, *see Exec. Mgmt.*, 963 P.2d at 475.

Whether a counterclaim is compulsory under Nevada law is governed by Rule 13 of the Nevada Rules of Civil Procedure. Rule 13 provides:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>
> > (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Nev. R. Civ. P. 13(a)(1). Two claims "arise[] out of the same transaction or occurrence" if "the pertinent facts of the different claims are so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit." *Mendenhall*, 403 P.3d at 370–71.

The Nevada Supreme Court has not directly addressed whether FDCPA claims relating to the collection of a debt are compulsory counterclaims in a prior action to collect that debt. The Court has, however, given some guidance on this issue. First, in considering whether a claim arises out of the same "transaction or occurrence" that is the subject matter of a suit, the Nevada Supreme Court has indicated that the phrase "transaction or occurrence" in Rule 13 should be interpreted broadly. *See MacDonald v. Krause*, 362 P.2d 724, 729 (Nev. 1961) ("The term 'transaction,' as used in the statute, is obviously broader than the term 'contract,' and authorizes matters to be set up as counterclaims, which could not be so pleaded as arising upon the contract relied upon by plaintiff.").

Second, the Nevada Supreme Court has observed that "[f]ederal cases interpreting the Federal Rules of Civil Procedure are strong persuasive authority because the Nevada Rules of Civil Procedure are based in large part upon their federal counterparts." *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872, 876 (Nev. 2002) (per curiam) (internal quotation marks omitted). Rule 13 of the Federal Rules of Civil Procedure is analogous to Nevada's Rule 13 and

contains the same "transaction or occurrence" language,[3] and federal courts also apply a "logical relationship" test to determine whether a claim arises out of the same transaction or occurrence such that it is a compulsory counterclaim. *See, e.g.*, *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). Accordingly, interpretations of Rule 13 of the Federal Rules of Civil Procedure may provide some guidance regarding how Nevada's Rule 13 should be interpreted.

But federal circuit courts are split on this question. Some courts have held that FDCPA claims, or similar claims under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, are not compulsory counterclaims in an action for recovery of the underlying debt. The Eighth Circuit, applying North Dakota's analogous logical relationship test, held that FDCPA claims are not logically related to the underlying debt actions because "the circumstances giving rise to the original debt are separate and distinct from the collection activities

---

[3] Rule 13 of the Federal Rules of Civil Procedure provides:

(a) Compulsory Counterclaim

(1) In General.  A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1).

undertaken" by the debt collector. *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981). The Eighth Circuit observed that although an FDCPA claim "may, in a technical sense, arise from the same loan transaction," and there may be some overlapping issues between the FDCPA action and the underlying action to recover the debt, there is nevertheless no logical relationship between the two. *Id.*; *see also Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 383 (6th Cir. 1984) ("While the claim and counterclaim do arise out of the same transaction within the literal terms of Rule 13(a), we do not believe that they are logically related in such a way as to make the counterclaim compulsory."). The Fourth and Sixth Circuits have reached similar conclusions. *See Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1102 (6th Cir. 2015) (holding that a foreclosure claim is not logically related to an FDCPA claim arising out of the underlying debt because the two claims raise different legal issues and have only some overlap in the facts necessary for adjudication); *Whigham v. Beneficial Fin. Co. of Fayetteville, Inc.*, 599 F.2d 1322, 1324 (4th Cir. 1979) (holding that a TILA claim bears no logical relationship to an action recovering the underlying debt because the TILA claim "invoke[d] a statutory penalty designed to enforce federal policy against inadequate disclosure by lenders," and did not seek to enforce obligations created by the loan document).

By contrast, the Fifth Circuit has held that an action to recover a debt is a compulsory counterclaim to a TILA claim arising out of that debt under Federal Rule 13. *See Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979). The court relied on "the obvious interrelationship of the claims and rights of the parties, coupled with the common factual basis of the claims," and held that TILA claims and

claims to recover the underlying debt are compulsory counterclaims. *Id.* at 1364.**[4]**

The defendants argue that Cutts's FDCPA claims were compulsory counterclaims under Nevada's Rule 13 because there is a common factual basis for Cutts's FDCPA claims and defendants' debt collection action. In order to prevail on his claims that the defendants misrepresented the character and amount of the debt and attempted to collect more money than they were owed under the agreement, defendants argue, Cutts will have to establish the nature and scope of the debt agreement. According to defendants, these same facts were at issue in Richland's state court action to collect under the same debt agreement.

By contrast, Cutts argues that FDCPA claims are not compulsory counterclaims under Nevada's Rule 13 because they are not logically related to the defendants' action to recover the debt. According to Cutts, the FDCPA claims raise distinct questions of law and relate to potential

---

**[4]** The Ninth Circuit has not ruled on this issue, but like the Nevada Supreme Court, has adopted a "logical relationship test" for determining whether a claim is a compulsory counterclaim, and has interpreted this test broadly. *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005)).

collections abuses, rather than relating to a state law right to recover the debt under the contract.

Because the Nevada Supreme Court has not directly addressed the question whether FDCPA claims relating to the collection of a debt are compulsory counterclaims in a prior action to collect that debt, and because the federal courts are split on this issue, we need guidance on whether Cutts's FDCPA claims are compulsory counterclaims to Richland's state court action to collect the debt. If they are, then claim preclusion bars Cutts from bringing those claims now. *See Mendenhall*, 403 P.3d at 368. On the other hand, if Cutts's FDCPA claims were not compulsory counterclaims, they are not barred by claim preclusion and may proceed. *See Exec. Mgmt.*, 963 P.2d at 478. The Nevada Supreme Court's answer to this question will be dispositive of this issue in the earlier action, and we will follow its decision in this case.

IV

The Clerk of Court is hereby directed to transmit forthwith to the Nevada Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record. Submission of this case is withdrawn only as to Cutts's FDCPA claims, and the case will be submitted following receipt of the Nevada Supreme Court's opinion on the certified question or notification that it declines to answer the certified question. The Clerk shall administratively close this docket only as to Cutts's FDCPA claims pending a ruling by the Nevada Supreme Court regarding the certified question. The panel shall retain jurisdiction over further proceedings in this court. The parties shall notify the Clerk of this court within one week after the Nevada Supreme Court accepts or

rejects certification.  In the event the Nevada Supreme Court grants certification, the parties shall notify the Clerk within one week after the Court renders its opinion.

**QUESTION CERTIFIED; PROCEEDINGS STAYED.**

_____

Ronald M. Gould
Circuit Judge

## Supplemental Material

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we include here the designation of the parties who would be the appellant and appellees in the Nevada Supreme Court, as well as the names and addresses of counsel.

For Appellant Michael Cutts:

Vernon Nelson, Jr.
The Law Office of Vernon Nelson
6787 W. Tropicana Ave.
Suite 103
Las Vegas, Nevada 89103

For Appellees Richland Holdings, Inc., and Clifford Molin:

Chad F. Clement
Marquis Aurbach Coffing
10001 Park Run Drive
Las Vegas, Nevada 89145

Jonathan B. Lee
Marquis Aurbach Coffing
10001 Park Run Drive
Las Vegas, Nevada 89145