NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: HALSEY MCLEAN MINOR, <br><br> Debtor, <br> ――――――――――――――――― <br><br> HALSEY MCLEAN MINOR, <br><br> Appellant, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Appellee. | No. 21-55360 <br><br> D.C. No. 2:20-cv-03626-ODW <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted April 7, 2022
Pasadena, California

Before: MURGUIA, Chief Judge, and GRABER and BEA, Circuit Judges.

Halsey McLean Minor appeals from the district court's order that affirmed

the bankruptcy court's order, granting the United States' motion for judgment on

the pleadings and denying Minor's motion for judgment on the pleadings. Minor

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

initiated this adversary action in the bankruptcy court, seeking a declaratory judgment determining the amount of unsatisfied priority tax debt that Minor still owes to the Internal Revenue Service ("IRS"). We have jurisdiction under 28 U.S.C. § 158(d)(1) and affirm.

"We review the district court's decision on appeal from the bankruptcy court de novo." *Mano-Y & M, Ltd. v. Field* (*In re Mortg. Store, Inc.*), 773 F.3d 990, 994 (9th Cir. 2014). The bankruptcy court's "[f]indings of fact are reviewed under the clearly erroneous standard" and "legal conclusions are reviewed de novo." *Id.* We review de novo the grant of a motion for judgment on the pleadings. *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).[1]

Tax debt that is entitled to priority under 11 U.S.C. § 507(a)(8) is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(1)(A). The parties agree that Minor's tax debt for tax year 2009 meets the requirements of 11 U.S.C. § 507(a)(8) (even though the IRS's proof of claim included that debt in its secured claim) and, therefore, the 2009 tax debt was not discharged by the bankruptcy proceeding. Ordinarily, the IRS may pursue additional nondischargeable debt for a particular tax year after the close of a bankruptcy case, even if the IRS included debt for that year in a proof of claim during the bankruptcy proceeding. *DePaolo*

---

[1] Because the parties are familiar with the facts, we do not repeat them here, except where necessary to provide context for our ruling.

2

*v. United States* (*In re DePaolo*), 45 F.3d 373, 376 (10th Cir. 1995); *see also*

*Dolven v. Bartleson* (*In re Bartleson*), 253 B.R. 75, 80 (B.A.P. 9th Cir. 2000).

Minor's sole contention is that, under the doctrines of claim preclusion and issue preclusion, the Stipulation "allowing" the IRS's priority claim of $997,869.07 and the court order granting the Stipulation preclude the IRS from collecting more than $997,869.07 in priority debt. Because the Trustee distributed to the IRS $882,680.74 in partial fulfilment of the $997,869.07 claim of priority debt, Minor contends that he cannot now owe more than $115,188.33.

"Under the doctrine of claim preclusion, [1] a final judgment on the merits in a case precludes [2] a successive action between identical parties or privies [3] concerning the same claim or cause of action." *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019) (citation and quotation marks omitted). The party seeking to rely on the doctrine "must establish that preclusion applies." *Id.* "We look to the intent of the settling parties to determine the preclusive effect of [an order] entered in accordance with a settlement agreement." *Id.*

"Issue preclusion prevents a party from relitigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that

action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (citation and quotation marks omitted). "The burden is on the party seeking to rely upon issue preclusion to prove each of the elements have been met." *Id.* at 1050–51. "A stipulation may meet the fully litigated requirement where it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action." *United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 873 (9th Cir. 2001) (citation and quotation marks omitted).

Minor has not met his burden to show that either claim or issue preclusion applies because the Stipulation did not resolve the same claim or issue that Minor now raises, namely, the full amount of nondischargeable tax debt, penalties, and interest for tax year 2009 that the IRS may pursue. The expressed intention of the parties, as evidenced in the Stipulation, determines the preclusive effect of the claims or issues resolved in the Stipulation. *See Wojciechowski*, 923 F.3d at 689; *22 Santa Barbara Drive*, 264 F.3d at 873.

Here, the terms of the Stipulation make clear that the Trustee and the taxing agencies entered into the Stipulation to divide up the limited funds remaining in the bankruptcy estate, not to cap the amount of nondischargeable tax debt that the IRS

4

could collect from Minor after the bankruptcy estate had been fully distributed. Minor argues, however, that the Stipulation was not for the sole purpose of determining the distribution from the bankruptcy estate because the Stipulation also fixed the amount of the IRS's priority claim. But increasing the amount of the taxing authorities' priority claims "allowed" by the Stipulation would have had no effect on the final distribution that any party to the Stipulation received. The Stipulation ensured that, after the (reduced) secured claims and administrative costs were paid, the IRS and California Franchise Tax Board would receive equal payment on their priority claims until the bankruptcy estate was exhausted, ahead of the $55 million of allowed general unsecured claims. The amounts of the priority claims "allowed" by the Stipulation, which were merely copied from the amounts in the taxing agencies' amended proofs of claims, were sufficient to ensure that the remaining free cash in the bankruptcy estate would be received by the taxing agencies in payment for priority claims.

Minor relies on *In re Matunas*, 261 B.R. 129 (Bankr. D.N.J. 2001), and *In re Breland*, 474 B.R. 766 (Bankr. S.D. Ala. 2012). But, in those cases, the IRS entered into agreements *with debtors*. In *In re Matunas*, the IRS entered into a stipulation with the debtor that "determine[ed] the amounts owed to the IRS." 261 B.R. at 134. Similarly, in *In re Breland*, the IRS and debtor jointly "negotiated and submitted" a consent order that "settled a confirmation dispute," 474 B.R. at 767,

769. By contrast, and similar to this case, a stipulation between a creditor and a bankruptcy trustee that certain "claims would be allowed" or "withdrawn" against the bankruptcy estate has no preclusive effect on the dischargeability of the creditor's claim, when the agreement "did not purport to resolve" the dischargeability of claims against the debtor. *Hawaii v. Parsons* (*In re Parsons*), 505 B.R. 540, 545–46 (Bankr. D. Haw. 2014).

Claim preclusion, unlike issue preclusion, does not apply for the additional reason that Minor is not in privity with any of the parties to the Stipulation. *See Wojciechowski*, 923 F.3d at 689.

**AFFIRMED.**